Davis, J.
The counsel for the plaintiffs in error have very ably and plausibly argued that the gist of this action is the keeping of the dog after knowledge that he was vicious and dangerous, and that unless it be alleged and proved that this knowledge was *182 joint, or that the defendants below were acting in concert, they could not be jointly sued and there could be no joint recovery against them. The defendants have earnestly and persistently kept this theory of the case before all the courts by motion, demurrer, answer and argument; and this is done with such evident sincerity that we think that this contention is entitled to consideration before we proceed to the matters on which we dispose of this case.
The real foundation of an action like the one at bar is not the keeping or harboring of the animal, as was said in one of the courts below, for he may be kept as a watch dog for the protection of the keeper’s person or property. Nor is it merely the keeping and harboring of the dog after knowledge» of his vicious and dangerous propensities and habits; for if he were cowardly, indolent and peaceable, he would not be of much service as a guardian of person or property. A person who has need for a watch dog, of necessity chooses one of more or less brute ferocity, and the law has never yet said that he may not lawfully keep such a protector by him; but the very qualities of the animal for such a purpose require that he shall be securely kept, so that injury may not result to innocent persons, who may be where they have a right to be and are in the pursuit of lawful purposes. Hence the gist of such an action as this is not the keeping of the dog with knowledge of his dangerous nature, but rather the negligent failure to properly restrain the animal, and to keep him so safely that he may not injure any one who is lawfully at the place.
Following this principle that the action is based on the negligent keeping, it has been laid down as the law, in many cases, that when it has been shown that the animal has been kept after knowledge of his dangerous character has been acquired, or circumstances from which the law would imply knowledge, and an injury has followed, this would be prima facie *183 evidence of negligence. Ray on Imposed Duties, Personal, 618, 619; 2 Am. & Eng. Ency. Law (2nd ed.), 368.
One may thus negligently keep and harbor a vicious dog, knowing him to be such, without being the owner of the animal; and he may thus keep and harbor a vicious dog without even owning or controlling the premises where he may be kept; and he may be chargeable with notice of the viciousness of the dog through his neglect to take notice of its vicious habits. Knowles v. Mulder (Mich.), 16 Am. St. Rep., 627 and cases cited in note; Brice v. Bauer, 2 Am. St. R., 454 and cases cited. It follows that there is nothing illogical, inconsistent, impracticable or illegal in charging two or more persons with negligently keeping and harboring a dog, with knowledge that he was vicious and dangerous. If the proof should sustain the charge as to all, the verdict and judgment would be against all. If the charge should be supported by the evidence as to some of the defendants and not as to others, the verdict and judgment should be against those so found guilty of the negligence charged.
There is no misjoinder of defendants apparent on the face of the pleadings in this case; the rights of the several defendants were carefully guarded by the trial judge in submitting the case to the jury, and, although the evidence is rather weak as to some of the defendants, there is not a total want of evidence as to any, when the case is viewed in the light of the principles which we have here indicated. It is not the province of this court to weigh the testimony. We therefore find no error in the mode in which this suit was brought, nor in the joint judgment against all of the defendants.
Of the other errors alleged upon this record, three, ' at least, require especial attention.
On the trial of the case in the common pleas court, one Charles J. Patterson was examined as a witness *184 in behalf of the defendants. On the cross-examination of this witness he was asked the following question:
Q. Did you say to Amelia Kern on a week ago last Tuesday morning here in the court house, you don’t want to say anything against Hayes’, if they ask you if the dog was cross then you must say no, the reason they shut the dog up was because they would lay in the front room on the carpet in front of people, and if you didn’t there, if you would stick to the Hayes’s I would give you $10.00, $15.00 or $25.00, and if you stuck to Smiths you wouldn’t probably get anything, you want to work for your own pocket book, did you say that to her?
The answer of the witness was a denial, except that he admitted that he had told Amelia Kern, in answer to a question by her, Avhy the dogs were shut up. Amelia Kern was afterwards permitted, over an objection by defendants, to contradict Patterson. The ground on Avhich this testimony was admitted, as stated by the court, was that it tended to show prejudice or bias on the part of the witness; and the court especially cautioned-the jury that this testimony was not to be considered except as affecting the credit of the witness Patterson. There was no error in this. It is clearly within a well recognized exception to the rule as to evidence collateral t-o the issue. Kent v. State, 42 Ohio St., 426; Attorney General v. Hitchcock, 1 Wels., Hurl., & G., 90.
A more serious question arises concerning the hypothetical questions propounded to the witnesses Lucy Keeler, George O. Harlan, William E. Lang and A. H. Jackson. The counsel for the defendants inquired particularly of each of these witnesses as to their actual knowledge of the dog, his habits, manner and conduct, and in every instance followed this line of inquiry with substantially this question: *185 “From your knowledge of the dog, what do you say as to his being a peaceable, quiet dog?”
It was said by Owen, J., delivering the opinion of this court in Railroad Co. v. Schultz, 43 Ohio St., 283; “Where it is practicable to place palpably before the jury the facts supporting their opinions, the witnesses should be restricted in their testimony to such facts, and the jurors left to form their opinions from these facts, unaided by the mere opinions of the witnesses.” And see Torpedo Co. v. Fishburn, 61 Ohio St., 608.
But whether this question was properly permitted or not, it was asked and answered without objection from , the plaintiff, and the trial judge was right in holding that the cross-examination of these witnesses' should be as broad as the examination in chief. But the defendants complain that the cross-examination was allowed to be made much broader than the examination in chief; and we think that their contention is a just one. It is true that the trial judge, in overruling the objection to the question on the cross-examination of the witness Lang, remarked: “It is not for the purpose of giving the jury his opinion of this dog on trial, but simply cross-examination on his standards of opinion. It is all the time a question for the jury to determine whether or not this dog was vicious or not.” . The questions which were allowed, however, went much further than to test the standards of the opinions which had been expressed by each of the witnesses. Each witness had expressly given his opinion of the disposition of the dog, as based on the actual knowledge of the witness. The plaintiff’s counsel were not content to show that the witness had no knowledge of specific instances of conduct by the dog, which would indicate a different disposition from that testified to, ánd were not content to let the jury draw the inferences as to the weight to be allowed to the opinion of the witness, in view of such lack of a broader knowledge *186 of the habits of the dog; but the plaintiff was per. mitted to assume a state of facts, not Avithin the knowledge of the witness, and upon that to demand of the non-expert witness, an opinion as to one of the material facts in issue in the case, a fact, too, as to which the testimony of experts was not competent. The question called for the hypothetical opinion of each witness so interrogated, in a matter which did not involve scientific knowledge or skill, and substituted that opinion for the deliberate judgment of the jury upon the sworn facts of the case. That was the effect of this line of inquiry, notwithstanding the reason given for it by the trial judge. This was reversible error.
The defendants also insist that they were deprived of a fair trial by misconduct of the plaintiff’s counsel on the argument to the jury. The facts are given in the statement and need not be repeated here. The language which was objected to is reprehensible to the last degree. It is none the less reprehensible and none the less inexcusable, because it Avas spoken by counsel of standing and ability. Thus spoken and passing unrebuked by the court, although the attention of the latter was frequently challenged by the counsel for defendants, it could not fail to impress itself on the jury as sanctioned by the character of the counsel and approved by the trial judge. Just and severe invective, which is supported by the testimony, is not improper. A generous latitude should be allowed to counsel; but the argument should always be decorous and should not impair the impartial administration of justice. Therefore, as it was held by the supreme court of North Carolina, in Coble v. Coble, Admr., 79 N. C., 589, “it is not within the privilege of counsel, in argument to a jury, to use language calculated to humiliate and degrade the opposite party in the eyes of the jury and by-standers, particularly when he has not been impeached.” The charge that the defendants were engaged in a phe-> *187 nomenal effort to suppress the truth and that they had made use of their wealth for the express purpose of keeping out the truth, was a serious and uncalled for attack on the integrity of the defendants and their counsel; and it cannot he excused as a reference to the numerous objections to evidence which are apparent in the record, because it is the right of a party to make such objections, and it is not the right of his adversary to charge him with bad motives in doing so. Nor wall we hunt for excuses to palliate the impropriety of discussing evidence alleged to have been ruled out, or of stating or suggesting as facts matters which were objected to as not having been given in evidence, when the court sits mute, when appealed to expressly upon these points.
“It may be laid down as law, and not merely discretionary, that when counsel’grossly abuses his privilege to the manifest prejudice of the' opposite party, it is the duty of the judge to stop him then and there. If he fails to do so, and the impropriety is gross, it is good ground for a new trial.” Jenkins v. N. C. Ore Dressing Co., 65 N. C., 563.
“No duty incumbent on the judge of a trial court is more imperative, nor more important to the fair and orderly administration of justice, than that of interposing to restrain everything in the course of the trial that tends to mislead the jury and to divert their minds from the strict line of inquiry with which they are charged.” Davis v. Hill, 75 N. Car., 224; Evans v. Trenton, 112 Mo., 390. “The courts have usually been very firm, whenever occasion has required, in confining counsel within proper and reasonable bounds to whatever is pertinent to the matter on trial. Statements of alleged facts not adduced in evidence, and comments thereon are irrelevant, not pertinent and are therefore clearly not within the privilege of counsel; and any such practice on the part of counsel should be promptly checked, especially when objected to by the other side.” Rolfe v. Rum- *188 ford, 66 Me., 566, citing Berry v. State, 10 Ga., 511; Mitchum v. State, 11 Ga., 615; Bulloch v. Smith, 15 Ga., 395; Dickerson v. Burke, 25 Ga., 225; Wright-man v. Providence, 1 Clifford, 521, and Tucker v. Henniker, 41 N. H., 317.
“That the practice complained of is highly reprehensible, no one can doubt. It ought in -every instance to be promptly repressed. For counsel to undertake by a side wind to get that in as proof which is merely eonjecturé, and thus to work a prejudice in the mind of the jury, cannot be tolerated. Nor ought the presiding judge to wait until he is called on to interpose. For it is usually better to trust to the discrimination of the jury as to what is, and what is not, in evidence, than for the opposite counsel to. move in the matter. For what practitioner has not regretted his untoward interference, when the counsel thus interrupted resumes. ‘Yes, gentlemen, I have touched a tender spot, the galled jade will wince; you see where the shoe pinches!” Berry v. State, 10 Ga., 522.
An apt illustration of the truth of the last quotation, and of the evil of non-interference by the court, is presented in that which took place in this case when the counsel made objection to certain statements of plaintiff’s counsel.
The record shows that the counsel for the defendants addressed his objections to the court at the time the improper language was spoken. The defendants, therefore, did not waive any of their rights; and, although it does not appear that the court then, or at any time, took any notice of the objections, the defendants had done all that they decently could do to obtain action by the court, and cannot be prejudiced by its failure or refusal to act.
The distinction between this case and that of The Warder, Bushnell & Glessner Co. v. Jacobs, 58 Ohio St., 77, is that in this case we have a full record, embodying all of the evidence, the arguments of *189 counsel, the charge of the court, ruling on the motion for new trial, etc., so that upon an inspection of the whole record there is no room for a presumption that the trial court did its duty in the premises. On the contrary it thus appears that the court took no notice of the objections raised by the counsel for defendants, and refused to rectify its error on the motion for a new trial.

Judgment reversed.